**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**CHARLES J. DAVIS,**

      **Plaintiff,**

**vs.**                           **Case No. 4:13cv504-MW/CAS**

**MICHAEL D. CREWS, et al.,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Defendants filed a motion to dismiss and motion for more definite statement, doc. 20, on October 11, 2013. Plaintiff, a pro se inmate, was directed to file a response to that motion by November 18, 2013. Doc. 21. Plaintiff filed a response to the motion, doc. 24, and then a motion for extension of time in which to respond, doc. 25. That motion was granted, doc. 26, and Plaintiff filed another response on December 20, 2013. Doc. 27. Both of Plaintiff's responses, docs. 24 and 27, have been considered.

**Allegations of the Complaint, doc. 7**

Plaintiff's complaint is brought against eighteen Defendants. *See* doc. 6. Plaintiff's initial complaint officially named only Michael Crews, Secretary of the Florida Department of Corrections, Chris Landrum, Warden of the Suwannee Correctional Institution, and an unspecified number of John and Jane Doe Defendants. *See* Doc. 7

at 2.  However, Plaintiff unofficially named an additional sixteen persons as Defendants within the body of the complaint.  *Id.* at 7, 10.  Prior to removal, Plaintiff's motion to add the additional Defendants was granted.  *See* doc. 1-1 at 146-148, 157-159, and 161-162.  This case is brought against eighteen Defendants.[1]  *See* doc. 6 at 2-3; doc. 7 at 7, 10.  Construed liberally, the basic issue raised is that when Plaintiff was "placed on 72 hour strip," which occurred on many occasions "for alleged minor rule violations," Plaintiff contends he was deprived of his basic human needs, *Id.* at 3, including the deprivation of pain medication.  *Id.* at 5.  Plaintiff also contends he was placed "on 72 hr. strip as an added punishments [sic], for filing grievances, being a writ writer, out of retaliations [sic]."  *Id.* at 3.  Plaintiff contends that he filed grievances on this issue which informed Defendants Landrum and Crews of "the wrongful usage of the 72 hr. property restrictions scheme."  *Id.* at 4.  Plaintiff alleged that staff at Suwannee Correctional Institution "has an history of placing inmates illegally on 72 hr. property restrictions" and that this abuse was willfully allowed to continue "as added punishment."  *Id.*  Plaintiff specifically contends that Defendants Landrum and Crews "knew of this matter and failed to correct it."  *Id.*  Plaintiff alleged that the "unconstitutional rule violation was consistently and regularly" carried out by staff, presumably at the direction of the administration.  *Id.* at 7.  Plaintiff specifically alleged that Defendant Warden Landrum directed staff to place Plaintiff "on 72 hr. strip, intentionally, to deprive him of his basic human needs . . . ."  *Id.* at 9.  Plaintiff sues all Defendants in their individual capacities,

---

[1] The additional sixteen Defendants are: Lt. Wilson, Lt. D. Robinson, Lt. Perry, Sgt. Lindblade, Sgt. Baxley, Sgt. Kelly, Sgt. Harvey, J. Black, W. Smith, Williamson, Landrum, John A. Coates, Chris Tomlinson, Daniel Howell, D. Mullen, and E. Sodrel, Jr. Doc. 7 at 10, ¶9.

seeking both compensatory and punitive damages, but Plaintiff also sues Defendant Crews in his official capacity. *Id.*

**Defendants' Motion to Dismiss, doc. 20**

To the degree Plaintiff's claims are against Defendant in their official capacities, Defendants request they be dismissed because Defendant are entitled to sovereign immunity. Doc. 20 at 1. Claims against the Defendants in their individual capacities should be dismissed because all Defendants are entitled to qualified immunity. *Id.* Defendants Crews and Warden Landrum seek dismissal of the claim against them because there is no respondeat superior liability. Doc. 20 at 1-2. Further, Defendants seeks dismissal of Plaintiff's claims for damages because Plaintiff did not allege that he suffered physical injury. *Id.* at 2. Defendants seek an order requiring Plaintiff to more clearly allege a basis for his "state tort" claims. Defendants are unaware of which torts Plaintiff contends they have violated. *Id.*

**Standard of Review**

The pleading standard under Rule 8 is not heightened, but flexible, in line with the Rule's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). Pro se complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986), citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not

proceed through discovery and "take up the time of a number of other people . . . ."

Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577

(2005), *quoted in* Twombly, 127 S.Ct. at 1966.  A complaint does not need detailed

factual allegations to survive a motion to dismiss, but it must provide the grounds for a

plaintiff's entitlement to relief beyond mere "labels and conclusions, and a formulaic

recitation of the elements of a cause of action . . . ."  Twombly, 127 S.Ct. at 1964-65.

> If a pleading fails to specify the allegations in a manner that provides
> sufficient notice, a defendant can move for a more definite statement
> under Rule 12(e) before responding.  Moreover, claims lacking merit may
> be dealt with through summary judgment under Rule 56.

Swierkiewicz, 122 S.Ct. at 998-999.

In reviewing a motion to dismiss based on qualified immunity, the court must

accept "the facts alleged in the complaint as true, drawing all reasonable inferences in

the plaintiff's favor, and limiting [ ] review to the four corners of the complaint."  St.

George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002) (citations omitted),

*quoted in* Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010).   The Supreme

Court has established a two step analysis for resolving qualified immunity issues.

Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

First, a court should decide whether the facts that a plaintiff has alleged 'show the

[defendant's] conduct violated a constitutional right.' "  Saucier, 533 U.S. at 201, *quoted*

*in* Randall v. Scott, 610 F.3d 701, 715 (11th Cir. 2010).  "Second, the court must decide

'whether the right was clearly established.' "  *Id.;* Scott, 610 F.3d at 715.  While Saucier

mandated that sequence, the Supreme Court concluded in Pearson v. Callahan, 129

S.Ct. 808, 818 (2009) that the process "should no longer be regarded as mandatory."

Judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S.Ct. at 818.

**Analysis**

**A.      Motion for More Definite Statement**

Defendants correctly argue that Plaintiff's pendent state law claims are too vague and ambiguous for Defendants to address.  Doc. 20 at 9.  Plaintiff's complaint alleges a claim for "Intentional tort" against sixteen of the Defendants, doc. 7 at 10, but Plaintiff does not identify *which* intentional tort.  Plaintiff additionally alleges a claim for "State tort" against Defendant Crews, *id.*, but again, Plaintiff does not state *which* tort.  There are numerous torts, and Plaintiff must submit an amended complaint in which he specifically identifies the tort Defendants have committed, describes the action by each named Defendant which gives rise to that Defendant's liability, alleges facts which show that Defendant intended to harm Plaintiff, and explains how Plaintiff was injured.  If Plaintiff intended to only allege a claim for negligence pursuant to FLA. STAT. § 768.28, Plaintiff must provide the factual allegations to support such a claim and Plaintiff must demonstrate that he complied with the pre-suit notice requirement of § 768.28(6)(a).[2] The motion for a more definite statement, doc. 20, should be **GRANTED** and Plaintiff should be required to submit an amended complaint.

---

[2] Plaintiff did assert that pre-suit notice was given on April 25, 2013.  Doc. 7 at ¶16.  Plaintiff should retain that allegation and provide greater detail about how he provided that notice, to whom it was directed, and what was stated in the notice.

**B.**      **Official Capacity Claims**

Defendants seeks dismissal of Plaintiff's claims against them in their official capacities.  Doc. 20 at 6-7.  Plaintiff stated that all Defendants were sued in their individual capacities, with one exception; Plaintiff sues only Defendant Crews in his official capacity.  Doc. 7 at 9-10.

Absent limited exceptions, the State of Florida and its agencies are immune from suit in this Court by force of the Eleventh Amendment.  Carr v. City of Florence, Ala., 916 F.2d 1521, 1524 (11th Cir. 1990); *see also* Kentucky v. Graham, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985) (reiterating that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court.").  That "bar remains in effect when State officials are sued for damages in their official capacity."  Kentucky, 473 U.S. at 169, 105 S.Ct. at 3107; *see also* Odebrecht Const., Inc. v. Secretary, Fla. Dep't of Transp., 715 F.3d 1268, 1289 (11th Cir. 2013) (same).  The Supreme Court has clarified that "the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment."  Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 58, 116 S. Ct. 1114, 1124, 134 L. Ed. 2d 252 (1996) (concluding "that the type of relief sought is irrelevant to whether Congress has power to abrogate States' immunity."), *citing* Cory v. White, 457 U.S. 85, 90, 102 S. Ct. 2325, 2329, 72 L. Ed. 2d 694 (1982) ("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the State itself simply because no money judgment is sought").  The Eleventh Amendment protects the State, therefore, not just from suits seeking monetary damages.  *See* Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 145-46, 113

S.Ct. 684, 688-89, 121 L. Ed. 2d 605 (1993)(noting "[t]he Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity), *quoting* In re Ayers, 123 U.S. 443, 505, 8 S.Ct. 164, 183, 31 L. Ed. 216 (1887)("The very object and purpose of the 11th Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties."), and *citing* Hans v. Louisiana, 134 U.S. 1, 13, 10 S.Ct. 504, 506, 33 L. Ed. 842 (1890); In re A.H. Robins Co., Inc., 235 B.R. 406, 409 (E.D. Va. 1999).

Thus, a suit under § 1983 against either the state or an agency of the state is absolutely barred by the Eleventh Amendment unless it meets one of three exceptions. The first two exceptions are through a waiver of sovereign immunity. *See* Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L. Ed. 2d 171 (1985); Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L. Ed. 2d 90 (1974); Gamble v. Florida Dep't of Health and Rehab. Servs., 779 F.2d 1509 (11th Cir. 1986). Waiver may be either by the State or Congress may override a state's immunity pursuant to its power under § 5 of the Fourteenth Amendment. Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank, 527 U.S. 627, 119 S.Ct. 2199, 2205-06, 144 L. Ed. 2d 575 (1999); Seminole Tribe, 517 U.S. at 55, 116 S.Ct. 1114.

In enacting § 1983, Congress did not abrogate a state's immunity, Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L. Ed. 2d 358 (1979); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L. Ed. 2d 662 (1974), nor did Florida waive its Eleventh Amendment sovereign immunity and consented to suit in federal court under § 1983. Gamble, 779 F.2d at 1520.

The third remaining exception to this constitutional bar is through <u>Ex Parte Young</u>, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1908). *See* <u>Idaho v. Coeur d'Alene Tribe of Idaho</u>, 521 U.S. 261, 269, 117 S.Ct. 2028, 138 L. Ed. 2d 438 (1997) (reaffirming that prospective relief may be sought against a state official in federal court); <u>Sandoval v. Hagan</u>, 197 F.3d 484, 492 (11th Cir. 1999), *citing* <u>Summit Med. Assoc. v. Pryor</u>, 180 F.3d 1326, 1336-38 (11th Cir. 1999).

> The doctrine prohibits state officers from enforcing state policies in violation of the Constitution or federal law under a legal "fiction" that "creates an imaginary distinction between the state and its officers, deeming the officers to act without the state's authority, and hence, without immunity protection, when they enforce state laws in derogation" of federal or constitutional rights.

<u>Sandoval</u>, 197 F.3d at 492, *citing* <u>Summit Med.</u>, 180 F.3d at 1337. This long-standing doctrine was explained by the Court as follows:

> The doctrine of <u>Ex parte Young</u>, which ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law, is regarded as carving out a necessary exception to Eleventh Amendment immunity. Moreover, the exception is narrow: It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought. Rather than defining the nature of Eleventh Amendment immunity, <u>Young</u> and its progeny render the Amendment wholly inapplicable to a certain class of suits. Such suits are deemed to be against officials and not the States or their agencies, which retain their immunity against all suits in federal court.

<u>Puerto Rico Aqueduct</u>, 506 U.S. at 146, 113 S.Ct. at 688-89.

In this case, Plaintiff sues Defendant Crews in his official capacity for allegedly violating his federal constitutional rights and seeks monetary damages as well as an injunction requiring Defendant Crews "to stop the illegal 72 hr. strip process . . . ." Doc. 7 at 12. The Eleventh Amendment does not bar this suit against Defendant Crews for

the requested prospective injunctive relief, but the request for monetary damages is barred. Defendants' motion to dismiss the complaint against Defendant Crews in his official capacity should be **GRANTED in part** and **DENIED in part**.

## C.      Respondeat Superior

Defendants contend that the only basis for Plaintiff's claims against Defendants Crews and Warden Landrum is "that they did not prevent the other Defendants from placing Plaintiff on property restriction status." Doc. 20 at 7. Defendants argue that Plaintiff's grievances are also insufficient to impose liability on them. *Id.* at 8. Thus, Defendants argue that because respondeat superior is not applicable in § 1983 cases, Plaintiff's claims against them should be dismissed. *Id.* at 7.

Construed liberally, Plaintiff's complaint alleged that on many occasions, he was placed on "72 hour strip" for minor infractions in violation of the Department's own rules and regulations. Doc. 7 at 3. Plaintiff alleged that officials "knew of this authority abuse and failed to correct it." *Id.* at 4. Plaintiff alleged that staff at Suwannee C.I. have a "history of placing inmates illegally on 72 hr. property restrictions." *Id.* He contends that Suwannee's administration "willfully allowed this abuse to take place, as added punishment." *Id.* Plaintiff specifically alleged that Defendants Crews and Landrum "both knew of this matter and failed to correct it." *Id.* He further alleged that the "unconstitutional rule violation was consistently and regularly, applied by CM correctional staff, directions of Admin." *Id.* at 7. Plaintiff alleged that there was a pattern and practice of misusing the rule, pursuant to a policy, to intentionally deprive Plaintiff and others of basic human needs. *Id.* at 8. He specifically alleged that Warden Landrum directed staff to place him on 72 hour strip, depriving him of basic human

needs for minor rule violations, knowing that this policy violated prisoners Fourth and Eighth Amendment rights. *Id.* at 9. For purposes of a motion to dismiss, a complaint with sufficient factual allegations must be accepted as true. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

"Supervisors can be held 'liable under . . . § 1983, for the unconstitutional acts of [their] subordinates if [they] personally participated in the allegedly unconstitutional conduct or if there is a causal connection between [their] actions . . . and the alleged constitutional deprivation.'" Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008), *quoted in* Hendrix v. Tucker, 535 F.App'x 803, 805 (11th Cir. 2013). In the Eleventh Circuit, the "causal connection" may be established by showing "(1) 'a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so'; (2) 'the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights'; or (3) 'facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" Douglas, 535 F.3d at 1322, *quoted in* Hendrix, 535 F.App'x at 805; *see also* Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (describing instances when a supervisor can be held liable under § 1983).

"The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990), *quoted in* Schwartz v. Gwinnett Cnty, 924 F.Supp.2d 1362, 1372 (N.D. Ga. 2013); *see also* Doe v. School Bd., 604 F.3d 1248, 1266 (11th Cir. 2010). Where it does not

appear that inmate abuse is isolated but, rather, occurs "with sufficient regularity," it may be sufficient to demonstrate a history of widespread abuse.  *See* Valdes v. Crosby, 450 F.3d 1231, 1244 (11th Cir. 2006) (finding that the evidence was sufficient to show widespread abuse at F.S.P., sufficient to present a triable issue of fact, and sufficient to deny qualified immunity).  Case law on this issue reveals that "[i]solated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisory person[3] does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied."  Owens v. Leavins, No. 5:05cv228, 2006 WL 2640275, at *4 (N.D. Fla. Sept. 13, 2006); *see also* Holmes v. Correction Corp. of America, No. CV511-064, 2011 WL 3490086, at *1 (S.D. Ga. Aug. 9, 2011); Tariq v. Chatman, No.1:11cv159, 2012 WL 3626827, at *1 (M.D. Ga. Aug. 22, 2012).  Furthermore, conclusory allegations of widespread abuse or existence of a custom or policy are insufficient to impose supervisory liability.  Schwartz, 924 F.Supp.2d at 1372; *see also* Smith v. Thomas, No. 2:12cv125, 2013 WL 800697, at *5 (Mar. 4, 2013).

Here, Plaintiff has made conclusory allegations that all three of the criteria for finding supervisory liability exists.  Plaintiff has not, however, provided specific facts to support those conclusions.  Thus, the motion to dismiss should be **GRANTED**, but Plaintiff should be provided an opportunity to submit an amended complaint which

---

[3] It is true, and well established in this circuit "that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.' "  Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994), *quoted in* Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999).

alleges the facts which demonstrate a history of widespread abuse,[4] or that Defendants

Crews and/or Landrum had a policy permitting the improper use of the 72 hour strip to

improperly punish inmates, or to allege facts which support Plaintiff's contention that

Defendants Crews and/or Landrum directed lower level correctional officers to act

unlawfully in this manner.

**D.    Physical Injury**

Defendants seek dismissal of Plaintiff's claims for monetary damages on the

basis that Plaintiff did not suffer physical injury which was more than *de minimis*.  Doc.

20 at 8-9.  Plaintiff alleged some minor discomfort, but he did not allege actual physical

harm.  In response to the motion to dismiss, Plaintiff asserted that he had medical

passes for no prolonged standing or walking because of a pinched nerve in his lower

back and a ruptured disc but Plaintiff contends that when he was subjected to the

freezing cold temperatures in his cell, he had to walk continually to keep warm which

caused problems in his right foot.  Doc. 27.  Plaintiff also said that he suffered "with very

sharp, painful muscle spasms in his lower back, and legs, from constantly having to

stand on his feet and walk in order to keep warm inside the freezing cold housing cell."

*Id.*  Those conditions are *de minimis* and do not demonstrate sufficient physical injury to

Plaintiff.  Thus, even if Plaintiff is successful in this action, Plaintiff's request for

compensatory monetary damages must necessarily be limited to nominal damages as

---

[4] Plaintiff alleges that between March of 2012 and March of 2013, he was placed on "72 hour strip" a total of five times.  It is not clear that five incidents in one year amounts to "wide spread" abuse.  *See* Hawk v. Klaetsch, 522 F.App'x 733, 735 (11th Cir. 2013)(failing "to see how three incidents over the span of nearly five years can constitute frequent, widespread, or rampant abuse."); Valdes, 450 F.3d at 1241-43 (noting evidence of at least thirteen complaints and inquiries in the year and a half preceding the death of inmate Valdes).

required by 42 U.S.C. § 1997e(e). <u>Harris v. Garner</u>, 216 F.3d 970 (11th Cir. 2000)[5],

*reinstating in part* 190 F.3d 1279 (11th Cir. 1999); <u>Osterback v. Ingram, et al.</u>, No. 00-

10558, 263 F.3d 169 (11th Cir. 2001) (Table). Furthermore, the PLRA also precludes

an award "of punitive damages in the absence of physical injury." <u>Al-Amin v. Smith</u>, 637

F.3d 1192, 1199 (11th Cir. 2011). Accordingly, Defendants' motion to dismiss the

claims for damages should be **GRANTED in part** and Plaintiff's claims limited to

nominal damages.

**E.    Qualified immunity**

Finally, Defendants assert qualified immunity and contend that (1) Plaintiff's

complaint "fails to state a claim for any constitutional violation" and (2) that no case law

exists which "determined that an inmate's First, Fourth, or Eighth Amendment rights

were violated by placing an inmate on property restriction for a period of 72 hours or

less." Doc. 20 at 4. Defendants contend that "no authoritative court has decided - as a

broad principle - that placing an inmate on property restriction status after the inmate

was found to have misused or destroyed property ('X Conduct') was unconstitutional

under the First, Fourth, or Eighth Amendments and the Defendants are, therefore,

entitled to qualified immunity." *Id.* at 6.

Before proceeding to the qualified immunity analysis, it is worth clarifying that

Plaintiff's claims in this case, liberally construed, are not simply that his rights were

violated by utilizing the property restriction rule.   Rather, Plaintiff's claims are that the

---

[5] <u>Harris v. Garner</u>, 190 F.3d 1279 (11th Cir. 1999) was vacated by 197 F.3d
1059, and the Opinion Reinstated in Part on Rehearing by 216 F.3d 970 (11th Cir.
2000), *cert. denied* 121 S. Ct. 2214 (2001). The parts of the panel opinion relevant to
this legal issue were reinstated.

"72 hour strip" rule was improperly used against him for minor violations, in violation of the Department's own rules and regulations. Doc. 7 at 3. Further, Plaintiff contends that he was subjected to the rule as added punishment "for filing grievances, being a writ writer," which Plaintiff contends is retaliatory. *Id.* Plaintiff's allegations also suggest that in each of the five instances where he was placed "on 72 hr. strip," fabricated disciplinary infractions were used to do so. *Id.* at 7-8.

It is also worth clarifying that "[s]trip is also known as property restriction." Thomas v. Rodgers, No. 3:13cv1052, 2013 WL 6017327, at *1 (M.D. Fla. Nov. 13, 2013) (noting inmate's allegation that "State and personal property are removed from the cell for 72 hours."). As noted in greater detail below, all of Plaintiff's property, including clothing and bedding was removed. Moreover, Plaintiff alleged that every day items of life's necessities, including hygiene and sanitation items were removed as well. Doc. 7 at 1, 4. Plaintiff contends that he was subjected to "freezing cold air" while in his boxer shorts, that "the concrete floor was extremely cold, [and] the bare steel was cold to sit on or lay down to rest . . . ." *Id.* at 6.

Plaintiff's complaint specifically raises claims under the First, Fourth, and Eighth Amendments. Doc. 7 at 1. Each of these claims will be addressed below.

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing Farrow, 320 F.3d at 1248). Plaintiff, here, has

alleged that the Defendants collectively retaliated against him because he filed grievances concerning the conditions of his confinement. Plaintiff's First Amendment rights were clearly established at the time of these alleged events and qualified immunity should be **DENIED** as to Plaintiff's First Amendment claim.

The basis for Plaintiff's asserted Fourth Amendment claim appears to be that Defendants violated his right against "unreasonable seizures" when his property was taken during the 72 hours. *See* doc. 7 at 11. By virtue of their incarceration, inmates have some reduced constitutional rights and the loss of many privileges and rights. *See* Sandin v. Conner, 515 U.S. 472, 485, 115 S.Ct. 2293, 2301, 132 L.Ed.2d 418 (1995). For example, inmates have diminished expectations of privacy in their prison cells, and searches are permissible, including strip searches. *See* Bell v. Wolfish, 441 U.S. 520, 558, 99 S.Ct. 1861, 1184 (1979); Hudson v. Palmer, 468 U.S. 517, 526 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984) (holding that prisoners have no subjective expectation of privacy in his prison cell and "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."); *see also* O'Connor v. Carnahan, No. 3:09cv224, 2012 WL 2201522, at *8 (N.D. Fla. Mar. 27, 2012) (stating that "Hudson precludes Fourth Amendment challenges to prison cell searches and seizures taken for any reason, whether reasonable or not"). Plaintiff was temporarily deprived of his property for 72 hours, and the seizure of an inmate's property pursuant to an alleged rule violation is not unconstitutional. The motion to dismiss should be **GRANTED** as to Plaintiff's Fourth Amendment claim.

The Eighth Amendment[6] governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Although the Amendment does not require comfortable prisons, it prohibits inhumane ones. *Id.* The Eighth Amendment guarantees that prisoners will not be "deprive[d] ... of the minimal civilized measure of life's necessities." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981), *quoted in* <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1289 (11th Cir. 2004). "[B]asic human necessities include food, clothing, shelter, sanitation, medical care, and personal safety." <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1511 (11th Cir. 1991), *cited in* <u>Collins v. Homestead Corr.l Inst.</u>, 452 F.App'x 848, 850-851 (11th Cir. 2011). "[T]o make out a claim for an unconstitutional condition of confinement, 'extreme deprivations' are required . . . ." <u>Thomas v. Bryant</u> 614 F.3d 1288, 1304, 1306-07 (11th Cir. 2010) (concluding that non-spontaneous use of chemical agents on inmates with mental illness violated the Eighth Amendment), *citing* <u>Hudson v. McMillian</u>, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

In <u>Thomas v. Rodgers</u>, the prisoner alleged that he had been subjected to cruel and unusual punishment in violation of the Eighth Amendment when he was placed on strip one time. 2013 WL 6017327, at *1. Noting that Plaintiff did not allege how cold the temperature was in his cell, that he suffered any injury from his 36-hour exposure to

---

[6] "In the prison context, three distinct Eighth Amendment claims are available to plaintiff inmates alleging cruel and unusual punishment, each of which requires a different showing to establish a constitutional violation." <u>Thomas v. Bryant</u>, 614 F.3d 1288, 1303-04 (11th Cir. 2010). This case raises a claim to the conditions of confinement and is not an excessive force claim or a deliberate indifference to medical needs claim.

cold temperatures, that the defendants knew of a risk of serious harm to plaintiff, or that he ever informed the defendants that he was uncomfortably cold, the Middle District of Florida concluded that the plaintiff had not alleged sufficient facts to support an Eighth Amendment claim. *Id.* at *4.

The distinction between that case and this case is that in <u>Thomas</u>, the plaintiff admitted that property restriction was a security tool and he said he was placed on such "status because the officers heard yelling." *Id.* Here, Plaintiff's allegations indicate that Plaintiff was not placed on strip as a legitimate means to maintain security or order, but that Plaintiff was falsely accused of conduct "maliciously, and sadistically, to cause him harm." Doc. 7 at 6. Plaintiff contends that on the strip, he was deprived of all clothing "but his boxer shorts;" he alleges he had no mattress, bedding, toilet tissue, soap, clothing, deodorant, toothpaste, toothbrush. *Id.* at 5-6. Plaintiff contends his legal work was taken, his pain medication was taken, he was subjected to "freezing cold" temperatures,[7] he was given no protection from the cold, the heater was never turned on, and he was subjected to having bright lights left on more than twenty hours each day, another alleged violation of the Department's own rules. *Id.* Plaintiff contends he endured these conditions "for a total of 18 days" and said that the temperature inside his housing cells were between 45 and 55 degrees. *Id.* at 3, 4, and 6.

---

[7] Courts have been troubled by prison officials' intentionally subjecting prisoners to extreme cold. *See* <u>Chandler v. Crosby</u>, 379 F.3d at 1290, n.22, *citing to* <u>Palmer v. Johnson</u>, 193 F.3d 346, 349 (5th Cir. 1999); <u>Mitchell v. Maynard</u>, 80 F.3d 1433, 1443 (10th Cir. 1996); <u>Del Raine v. Williford</u>, 32 F.3d 1024, 1035–36 (7th Cir. 1994); <u>Henderson v. DeRobertis</u>, 940 F.2d 1055, 1060 (7th Cir. 1991); <u>Corselli v. Coughlin</u>, 842 F.2d 23, 27 (2d Cir. 1988); <u>Lewis v. Lane</u>, 816 F.2d 1165, 1171 (7th Cir. 1987); *see also* <u>Dixon v. Godinez</u>, 114 F.3d 640, 641 (7th Cir. 1997) (reversing district court's grant of summary judgment on claim concerning extreme cold in prison cell).

Plaintiff's case is similar to claims raised in Chandler v. Baird, 926 F.2d 1057 (11th Cir. 1991). There the plaintiff alleged that he was subject to following conditions of restrictive confinement which he claimed "violated the Eighth Amendment proscription of cruel and unusual punishment." Plaintiff alleged:

> confinement in a cold cell with no clothes except undershorts and with a plastic-covered mattress without bedding; filth on the cell's floor and walls; deprivation of toilet paper for three days; deprivation of running water for two days; lack of soap, toothbrush, toothpaste, and linen; and the earlier occupancy of the cell by an inmate afflicted with an HIV virus. The averments of a cold cell were supplemented by specifics: that the temperature was as low as 60 degrees, that it was "ice cold", that plaintiff slept on the floor and on occasion huddled with a roommate, sleeping between two mattresses.

Chandler, 926 F.2d at 1063. The district court found that the defendants enjoyed qualified immunity on the Eighth Amendment claim, Id. at 1064, but the Eleventh Circuit reversed, citing a number of supporting cases from other circuits and the Supreme Court's decision in Rhodes v. Chapman. Id. at 1064-65. The Court "conclude[d] from [that] body of caselaw that plaintiff [was] entitled to have the trier of fact determine whether the conditions of his administrative confinement, principally with regard to the cell temperature and the provision of hygiene items, violated the minimal standards required by the Eighth Amendment." Id. at 1065.

Three years later, the Eleventh Circuit decided Chandler v. Crosby, 379 F.3d 1278 (11th Cir. 2004), and held that prisoners confined at Union Correctional Institution did not state an Eighth Amendment claim concerning the conditions of their confinement. The inmates claimed "that the combination of harsh summer temperatures, high humidity, and inadequate ventilation have created unconstitutional conditions of confinement." Chandler v. Crosby, 379 F.3d at 1295. In finding that the

inmates did not demonstrate the objective component of an Eighth Amendment claim, the Court distinguished that case from Chandler v. Baird, finding it was not controlling, noting that the Court was then concerned with the excessive cold claims, that pointing out that the opinion was rendered prior to several Supreme Court cases. *Id.* at 1296; *see also* Bennett v. Chitwood, 519 F.App'x 569 (11th Cir. 2013) (denying Eighth Amendment claim and affrming that jailers were entitled to qualified immunity). The Supreme Court cases cited by the court were Wilson, Hudson, Helling, Farmer, which are discussed below.

Wilson v. Seiter, 501 U.S. 294, 304, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991), answered the question as to what state of mind is required to show prison officials violated a prisoner's Eighth Amendment rights. Beginning with the requirement from Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), that a prisoner must show a "sufficiently culpable state of mind," and that Whitley[8] requires offending conduct to be "wanton," the Court pointed to language from Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), that the Constitution does not require "comfortable prisons" and finding that "only those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson, 501 U.S. at 297-98, 111 S.Ct. at 2323-24. The Court held that whether an inmate challenges the failure to provide medical care or the conduction of his confinement, the "deliberate indifference" standard

---

[8] Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), was concerned with a prison guard's attempt to quell a prison disturbance by shooting an inmate. The Court concluded found "that wantonness consisted of acting 'maliciously and sadistically for the very purpose of causing harm.' " Wilson, 501 U.S. at 302, *quoting* Whitley, at 320–321, 106 S.Ct. at 1085.

is still appropriate. *Id.* at 303-04, 111 S.Ct. at 2327. The Wilson Court also noted that even when one condition of confinement would not violate the Constitution, the "combination" of several conditions might do so. *Id.* at 304, 111 S.Ct. at 2327. The specific example cited by the Court was "for example, a low cell temperature at night combined with a failure to issue blankets." *Id.* Accordingly, Wilson supports the holding in Chandler that when jail or prison officials intentionally place an inmate in restrictive confinement, the combined deprivations between the cell temperature and hygiene items may violate the minimal standards required by the Eighth Amendment.

In Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992), the Court considered whether a prisoner must demonstrate "significant injury" to support a cruel and unusual punishment claim. Although that case dealt with the question in the use of force context, it noted that the extent of injury was but "one factor that may suggest 'whether the use of force" was necessary or evinced wantonness. *Id.* at 7, 112 S.Ct. at 999. The Court concluded that in the excessive force context, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated" regardless of whether "significant injury is evident." *Id.* at 9, 112 S.Ct. at 1000 (concluding that blows which caused "bruises, swelling, loosened teeth, and a cracked dental plate were not *de minimis").* Hudson reiterated that in a conditions of confinement case, the challenged condition must be extreme. *Id.*; *see also* Chandler v. Crosby, 379 F.3d at 1289. For present purposes, Plaintiff's allegations of being deprived of basic human needs like toilet paper, soap, toothbrush and toothpaste, and a mattress while confined in a cold cell in nothing but boxer shorts for three days at a time is an extreme deprivation. Hudson does not

overrule Chandler which, incidentally, noted that "the right of a prisoner not to be confined in a cell at so low a temperature as to cause severe discomfort and in conditions lacking basic sanitation was well established in 1986." Chandler v. Baird, 926 F.2d at 1065-66.

The third case which Chandler v. Crosby noted was not yet part of the analysis in Chandler v. Baird was Helling v. McKinney, 509 U.S. 25, 113 S.Ct. 2475 (1993), which considered "whether the health risk posed by involuntary exposure of a prison inmate to environmental tobacco smoke (ETS) can form the basis of a claim for relief under the Eighth Amendment." Id. at 27, 113 S.Ct. at 2478. Noting that when the State takes a person into custody, it has an obligation to "provide for his basic human needs," the Court held that an inmate need not await harm before seeking relief when the threat of future harm from the conditions of his confinement is significant. Id. at 35, 113 S.Ct. at 2481. The case did not alter the deliberate indifference standard, nor does it suggest that Chandler v. Baird is no longer appropriate or "well established" law. To the contrary, a prisoner "states a cause of action under the Eighth Amendment by alleging" that prison officials acted with deliberate indifference in the conditions of confinement imposed and the prisoner must "prove both the subjective and objective elements necessary" to support the claim. Id.

Finally, the Supreme Court's decision in Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994) explained what was required to show "deliberate indifference" and resolved a conflict between the circuits.[9]  In Farmer, a transsexual inmate was beaten

_____

[9] The Supreme Court pointed to two cases with "inconsistent tests for deliberate indifference." Id. at 832, 114 S.Ct. at 1976, citing McGill v. Duckworth, 944 F.2d 344, 348 (7th Cir. 1991) (holding that "deliberate indifference" required a "subjective standard

and raped by another prisoner. *Id.* at 830, 114 S.Ct. at 1975. Again, the Court began by reiterating that "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must" provide for the safety of inmates in their care and custody. *Id.* at 832, 114 S.Ct. at 1976. The Court also reiterated that "the Eighth Amendment is violated only when two requirements are met." *Id.* at 834, 114 S.Ct. at 1977. First, the objective element requires the deprivation to be "sufficiently serious" as when a prison official's act results "in the denial of 'the minimal civilized measure of life's necessities' . . . ." *Id.*, *quoting* Rhodes, *supra.* Second, the subjective element requires a showing that the prison official had a "sufficiently culpable state of mind" and was deliberately indifferent to an inmate's health or safety. *Id.* In establishing "the level of culpability deliberate indifference entails," the Court held that an official may be liable under the Eighth Amendment when he "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837, 114 S.Ct. at 1979. The Court pointed out that the Constitution forbids "cruel and unusual punishments" and explained that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 837-38, 114 S.Ct. at 1979. Thus, a subjective recklessness standard was adopted as the test for deliberate indifference. *Id.* at 939-840, 114 S.Ct. at 1980. That case does not overrule or diminish the holding of Chandler v. Baird.

---

of recklessness"), *cert. denied*, 112 S.Ct. 1265 (1992), and Young v. Quinlan, 960 F.2d 351, 360-61 (3d Cir. 1992) (holding that "a prison official is deliberately indifferent when he knows or should have known of a sufficiently serious danger to an inmate.").

Although <u>Chandler v. Baird</u> did not have the benefit of those four cases, the

Eleventh Circuit did have the benefit of <u>Estelle</u> and <u>Rhodes</u>, cases relied upon in each

of the other four cases.  None of the other cases eliminated an Eighth Amendment

claim to challenge a prison official's act which resulted "in the denial of 'the minimal

civilized measure of life's necessities'. . . ."  <u>Rhodes</u>, 452 U.S. at 347, 101 S.Ct. at 2399,

*quoted* in <u>Farmer</u>, at 834, 114 S.Ct. at 1977.

Two recent cases have distinguished <u>Baird</u> which should be noted.  In <u>Williams v.

Ozmint</u>, No. 3:08cv4139, 2010 WL 3814287 (D.S.C. Sept. 23, 2010),  the Court

concluded that Plaintiff did not satisfy the "sufficiently serious" requirement.  However,

the posture of that case was at the summary judgment stage, not on a motion to

dismiss, and the prisoner's affidavit was silent as to whether he had blankets or sheets,

and defendants evidence showed the prisoner was given a mattress, sheets, and a

blanket.  2010 WL 3814287 at *6-7.

In <u>Bennett v. Chitwood</u>, 519 F.App'x 569 (11th Cir. 2013), the Eleventh Circuit

affirmed a district court decision that jailers were entitled to qualified immunity at the

summary judgment stage of litigation.  The facts in that case were that jail officials were

treating inmates for scabies and, in the process, "required the inmates to undress, apply

a scabies treatment cream to their entire bodies, and remain nude from noon until

approximately 10:30 p.m. while their clothes, towels, and bed linens were washed."  *Id.*

at 571.  The court accepted that plaintiff was "uncomfortably cold," but found he was

nude for just ten and a half hours and "did not go without clothing or bed linens

overnight."  *Id.* at 574.  That case is distinguishable in its duration, the lack of other

deprivations in combination, and in the fact that the case was decided on summary judgment.

This case should not be dismissed on qualified immunity and Plaintiff should be provided an opportunity to support his claims with evidence showing that the combined conditions violated his Eighth Amendment rights. Plaintiff's allegations are enough to state an Eighth Amendment claim. *See* Kimbrough v. O'Neil, 523 F.2d 1057 (7th Cir. 1975) (reversing dismissal of an inmate's complaint where inmate alleged he had been placed in solitary confinement for three days without blankets, bedding, or a mattress, and without toilet paper, soap, or water); Wright v. McMann, 460 F.2d 126, 129 (2d Cir. 1972) (emphasis added) (affirming on the merits a finding of cruel and unusual punishment where an inmate had been confined for eleven days naked, without soap, towels, toilet paper, or bedding, forcing him to sleep on the concrete floor, and the temperature was "sufficiently cold to cause extreme discomfort"). The combination of the conditions of Plaintiff's confinement for three days at a time is sufficient to state an Eighth Amendment claim and Defendants motion to dismiss on qualified immunity should be **DENIED**.

To the degree Plaintiff's complaint, doc. 7, should be liberally construed to also allege a Fourteenth Amendment due process claim, that claim is insufficient. In Sandin v. Conner, 515 U.S. at 484-86, 115 S.Ct. at 2300, the Court held that an inmate presents a viable due process claim if he can show the deprivation of a "protected liberty interest." The Court concluded that such interests are generally limited to (a) those actions that unexpectedly alter the inmate's term of imprisonment; and (b) those actions that impose an atypical and significant hardship in relation to the ordinary

incidents of prison life.  Ordinarily, placement in confinement alone is not sufficient to state a due process claim, *see* <u>Rodgers v. Singletary</u>, 142 F.3d 1252, 1253 (11 th Cir.1998) (per curiam) (finding that an inmate was not deprived of a constitutionally protected liberty interest when he was placed in administrative confinement as result of an allegedly false disciplinary report), nor is punishment in disciplinary confinement or segregation after a disciplinary hearing.  *See* <u>Sandin</u>, 515 U.S. at 485, 115 S.Ct. at 2301 (noting that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law.").  Such events come within the ordinary incidents of prison life.

Furthermore, Plaintiff's challenges that various Defendants failed to comply with the rules or policies of the Department of Corrections are insufficient to state a claim.  It is well established that § 1983 "does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right." <u>Knight v. Jacobson</u>, 300 F.3d 1272, 1275 (11th Cir. 2002), *quoted in* <u>March v. Dep't of Children and Families</u>, No. 2:03CV162, 2006 WL 2644917 (M.D. Fla. Sept. 14, 2006). A violation of state law does "not give rise to a viable substantive due process claim." <u>Lovins v. Lee</u>, 53 F.3d 1208, 1211 (11th Cir. 1995) (citing <u>Collins v. City of Harker Heights, Texas</u>, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)); *see also* <u>Dean v. Escambia Cnty.</u>, No. 3:05cv29/LAC/MD, 2005 WL 927387 (N.D. Fla. Apr. 20, 2005) (holding that "[a]n alleged violation of a state statute does not give rise to a corresponding § 1983 violation, unless the right encompassed in the state statute is guaranteed under the United States Constitution.").  The motion to dismiss should be **GRANTED** on Plaintiff's Fourteenth Amendment due process claims.

**Recommendation**

In light of the foregoing, it is respectfully **RECOMMENDED** that: (1) Defendants' motion for a more definite statement, doc. 20, be **GRANTED** and Plaintiff be required to submit an amended complaint which explains the state law tort claim; (2) Defendants' motion to dismiss, doc. 20, against Defendant Crews in his official capacity be **GRANTED in part** as to monetary damages, but **DENIED in part** as to prospective injunctive relief; (3) the motion to dismiss, doc. 20, be **GRANTED**, but Plaintiff should be provided an opportunity to submit an amended complaint which alleges specific facts to support claims against the supervisory officials; (4) the motion to dismiss, doc. 20, be **GRANTED in part** and Plaintiff's claims limited to nominal damages; (5) the motion to dismiss, doc. 20, be **GRANTED in part** as to Plaintiff's Fourth and Fourteenth Amendment claims, but **DENIED** as to Plaintiff's First and Eighth Amendment claims.  It is further **RECOMMENDED** that this case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on February 3, 2014.


 S/     Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**



<u>**NOTICE TO THE PARTIES**</u>

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**